**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ANDREW WEARY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-3602** |
| **DARREL VANNOY** | **SECTION "E"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Subject Matter Jurisdiction

On June 17, 2000, the petitioner, Andrew Weary ("Weary"), a convicted state inmate, filed a federal petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 under Civ. Action 10-1793"C"(4), *Andrew Weary v. N. Burl Cain*.  In that petition, Weary asserted four grounds for relief:[2] (1) he was constructively denied effective assistance of counsel; (2) he received ineffective assistance of counsel; (3) the evidence was insufficient to support the armed robbery conviction; and (4) he was exposed to double jeopardy when he was convicted of both armed robbery and attempted first degree murder, where the murder charge may have been based on the same armed robbery.  On April 21, 2011, the undersigned Magistrate Judge recommended that the petition be

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Civ. Action 10-1793"C"(4), Rec. Doc. No. 1.

granted in part on the double jeopardy claim and denied in part as to all of the remaining claims.[3] On February 23, 2012, the Hon. United States District Judge Helen G. Berrigan adopted the report and recommendations and issued judgment ordering the state trial court to (1) vacate Weary's sentences on both convictions, (2) vacate one of the convictions, and (3) resentence Weary on the remaining conviction; the Court also dismissed all of the remaining federal habeas claims.[4]

According to the record currently before the Court, on May 23, 2012, the state trial court dismissed the sentences and the attempted first degree murder charge and resentenced Weary on the armed robbery count to serve 75 years in prison.[5] The state trial court clarified the resentencing at a hearing held on September 16, 2013, to assure its compliance with the mandate of this federal court.[6]

On April 4, 2018, Weary filed the instant federal habeas corpus petition challenging his resentencing proceedings. This is, therefore, his second federal habeas corpus petition. Pursuant to 28 U.S.C. § 2244(b)(1) and (2), a federal district court must dismiss a claim presented in a second or successive habeas corpus petition that was raised in a prior petition or which was not raised in a prior petition, unless the petitioner establishes one of the following exceptions: (1) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by

---

[3]*Weary v. Cain*, No. 10-1793, 2011 WL 7416509 at *1 (E.D. La. Apr. 21, 2011) (Roby, M.J.); Civ. Action 10-1793"C"(4), Rec. Doc. No. 24.

[4]*Weary v. Cain*, No. 10-1793, 2012 WL 601862, at *1 (E.D. La. Feb. 22, 2012) (Berrigan, J.); Civ. Action 10-1793"C"(4), Rec. Doc. Nos. 27, 28.

[5]St. Rec. Vol. 1 of 5, Resentencing Minutes, 5/23/12; St. Rec. Vol. 3 of 5, Resentencing Transcript, 5/23/12; *see also*, St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2014-KA-1706, 4/24/15; *Weary v. Cain*, 587 F. App'x 797 (5th Cir. 2014); Civ. Action 10-1793"C"(4), Rec. Doc. No. 57.

[6]St. Rec. Vol. 1 of 5, Minute Entry, 9/16/13; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2014-KA-1706, 4/25/15.

the United States Supreme Court, that was previously unavailable; or (2)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the petitioner guilty of the underlying offense.  Before a second or successive claim or petition can be considered on the merits by a district court, the petitioner must obtain authorization to file this second or successive petition from the United States Fifth Circuit Court of Appeals by making a *prima facie* showing of the above listed requirements to that appellate court as required by 28 U.S.C. § 2244(b)(3)(A).

However, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a prisoner's application is not [a prohibited] second or successive simply because it follows an earlier federal petition."  *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998); *see also In re Cathey*, 857 F.3d 221, 224 (5th Cir. 2017).  The "AEDPA's bar on second or successive petitions only applies to a later-in-time petition that challenges the same state-court judgment as an earlier-in-time petition."  *Cathey*, 857 F.3d at 224 (quoting *In Re Lampton*, 667 F.3d at 588).  A habeas corpus petition is not prohibitively successive when it is the first application challenging a new, intervening judgment rendered after the first federal habeas proceeding.  *See Magwood v. Patterson*, 561 U.S. 320, 341-42 (2010).  In *Magwood*, the Supreme Court found that a petitioner who had been resentenced after adjudication of his first federal habeas was allowed to proceed with a subsequent federal habeas petition challenging the intervening, new judgment.  *Id.*, 561 U.S. at 341-42.

In this case, Weary is challenging the circumstances of his resentencing which occurred as a result of this Court's adjudication of his first federal petition.  This resentencing by the state

courts constituted an intervening, new state court judgment of commitment under which Weary is now being held.  Therefore, Weary's current federal petition is not second or successive, and this Court has jurisdiction to proceed without need for authorization from the United States Fifth Circuit Court of Appeals.  *See*, *Id*., at 342.

## II.    State Court Factual and Procedural Background

Weary is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[7]   On August 30, 2000, Weary was charged by bill of information in Washington Parish with the armed robbery and attempted first degree murder of Luther Harris.[8] He entered a plea of not guilty on September 5, 2000.[9]

The record reflects that, on April 5, 2000, Luther Harris, a 79 year old resident of Bogalusa, Louisiana, received a telephone call from Weary, who had been his neighbor for several years.[10] Weary told Harris that he wanted to come over to repay Harris the money he had borrowed.  When Harris opened the door, Weary struck him with a tire iron several times in the head.  While trying to protect himself, one of Harris's fingers was severed.  Harris eventually fell to the floor.  Weary went to the bedroom for a few minutes and then left.  Harris called the police.

Upon their arrival, the officers noticed a large amount of blood in the living room and kitchen.  The officers called for medical services, and Harris was taken to the hospital.  Harris was

---

[7]Rec. Doc. No. 1.

[8]St. Rec. Vol. 1 of 5, Bill of Information, 8/30/00.

[9]St. Rec. Vol. 1 of 5, Minute Entry, 9/5/00.

[10]The facts are taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Weary*, 826 So.2d 654 (La. App. 1st Cir. 2002) (Table); St. Rec. Vol. 3 of 5, 1st Cir. Opinion, 2001-KA-2286, p. 2, 5/10/02.

able to tell the police that Weary attacked him.  Harris's relatives later located Harris's wallet and informed police that seven dollars in cash was missing from it.  They also were unable to locate Harris's cash that he placed under his mattress when he cashed his social security check.  Weary was later arrested in Lake Charles, Louisiana.

On December 4, 5, and 6, 2000, Weary was tried before a jury, and he was found guilty as charged on both counts.[11]  On May 9, 2001, following multiple hearings, the Trial Court sentenced Weary as a second felony offender to serve 75 years in prison on the armed robbery count without benefit of parole, probation, or suspension of sentence and denied his post-conviction motions for new trial and other relief from the sentence.[12]

On direct appeal, Weary's appointed counsel argued that the sentence imposed on the armed robbery count was unconstitutionally excessive.[13]  Weary filed a supplemental brief in which he asserted that the bill of information was insufficient to place him on notice of the charges against him.[14]

On May 10, 2002, the Louisiana First Circuit Court of Appeal affirmed the armed robbery conviction and sentence finding both claims meritless.[15]  However, the Court found on its own

---

[11]St. Rec. Vol. 1 of 5, Trial Minutes (4 pages), 12/4/00; Trial Minutes, 12/5/00; Trial Minutes, 12/6/00; Jury Verdict (Count 1), 12/6/00; Jury Verdict (Count 2), 12/6/00; Trial Transcript, 12/4/00; St. Rec. Vol. 2 of 5, Trial Transcript, 12/5/00; Trial Transcript, 12/6/00.

[12]St. Rec. Vol. 1 of 5, Minute Entry, 1/25/01; Multiple Bill, 1/25/01; Multiple Offender Hearing Minutes, 5/9/01; Motion for New Trial, 5/10/01; Trial Court Order(1), 5/21/01; Motion to Reconsider Sentence, 5/10/01; Trial Court Order(2), 5/21/01; Motion for Post-Verdict Judgment of Acquittal, 5/10/01; Trial Court Order(3), 5/21/01; Motion to Reconsider Sentence, 5/31/01; Trial Court Order, 7/11/01; Motion to Reconsider Sentence, 6/11/01, Trial Court Order, 6/18/01; St. Rec. Vol. 2 of 5, Hearing Transcript, 5/9/01.

[13]St. Rec. Vol. 2 of 5, Appeal Brief, 01-KA-2286, 10/23/01.

[14]St. Rec. Vol. 3 of 5, Supplemental Brief, 01-KA-2286, 1/16/02.

[15]*State v. Weary*, 826 So.2d at 654; St. Rec. Vol. 4 of 4, 1st Cir. Opinion, 2001-KA-2286, 5/10/02.

review that the Trial Court failed to sentence Weary on the attempted first degree murder conviction. The Court remanded the matter for sentencing on that count. The Louisiana Supreme Court later denied Weary's related writ application without stated reasons.[16]

In the meantime, on July 23, 2002, the Trial Court sentenced Weary on the attempted first degree murder count to serve 25 years at hard labor to run concurrently with the other sentence.[17] On December 15, 2003, Weary submitted an application for post-conviction relief which was construed and granted by the Trial Court as a motion for an out of time appeal from the attempted first degree murder sentencing.[18]

When addressing this appeal on May 5, 2006, the Louisiana First Circuit affirmed the attempted first degree murder conviction and sentence, having already affirmed the conviction and sentence for the armed robbery conviction.[19] The Louisiana Supreme Court denied without stated reasons Weary's subsequent writ application on February 2, 2007.[20]

Following several years of unsuccessful state court post-conviction review,[21] Weary sought federal habeas corpus relief in this Court in Civ. Action 10-1793"C"(4), as discussed previously in this report. In that case, Judge Berrigan partially granted Weary's federal habeas petition on

---

[16]*State ex rel. Weary v. State*, 847 So.2d 1228 (La. 2003); St. Rec. Vol. 3 of 5, La. S. Ct. Order, 2002-KH-1925, 6/20/03.

[17]St. Rec. Vol. 1 of 5, Sentencing Minutes, 7/23/02; *see also*, Minute Entry, 8/16/04; St. Rec. Vol. 3 of 5, Sentencing Transcript, 7/23/02.

[18]St. Rec. Vol. 3 of 5, Application for Post-Conviction Relief, 12/29/03 (dated 12/15/03); Trial Court Order, 1/28/04; *see also*, Trial Court Order, 2/3/05.

[19]St. Rec. Vol. 3 of 5, 1st Cir. Opinion, 2005-KA-2042, 5/5/06.

[20]*State v. Weary*, 948 So.2d 1076 (La. 2007).

[21]These proceedings are not relevant to the resolution of the current habeas corpus petition.

double jeopardy grounds, and ordered that the state trial court (1) vacate the prior sentences, (2) vacate one of the convictions, and (3) resentence Weary on the remaining conviction.

At a hearing held May 23, 2012, the state trial court vacated the prior sentences, accepted the prosecutor's entry of a *nolle prosequi* of the attempted first degree murder charge, and resentenced Weary on the armed robbery count to serve 75 years in prison.[22]

Weary filed a post-judgment motion in the federal habeas case, Civ. Action 10-1793"C"(4), arguing that the State failed to comply with the mandate because the *nolle prosequi* of the attempted first degree murder charge was not the same as vacating the conviction.  On August 19, 2013, Judge Berrigan also questioned whether the *nolle prosequi* equated to "vacating the conviction" and ordered the state trial court to comply with the prior mandate.[23]

On October 23, 2014, on certified appeal from Judge Berrigan's order, the United States Fifth Circuit held that, under Louisiana law, the *nolle prosequi* had the same effect as an order to vacate the conviction, but found no error in Judge Berrigan's decision to allow that state court additional time to correct its prior action and actually vacate the conviction.[24]

Nevertheless, while the federal appeal was pending, the state trial court held a hearing on September 16, 2013, to clarify the resentencing action to assure its compliance with the mandate of the federal district court.[25]  At the hearing, the Court repeated that the prior sentences were

---

[22]St. Rec. Vol. 1 of 5, Resentencing Minutes, 5/23/12; St. Rec. Vol. 3 of 5, Resentencing Transcript, 5/23/12.

[23]*Weary v. Cain*, No. 10-1793, 2013 WL 4499021, at *1 (E.D. La. Aug. 19, 2013); Civ. Action 10-1793"C"(4), Rec. Doc. No. 42.

[24]*Weary*, 587 F. App'x at 797; Civ. Action 10-1793"G"(4), Rec. Doc. No. 57.

[25]St. Rec. Vol. 1 of 5, Minute Entry, 9/16/13; St. Rec. Supp. Vol. 8 of 8, Hearing Transcript, 12/16/13 (erroneously dated 12/13/13).

vacated, that the conviction for attempted first degree murder was vacated, and re-imposed the 75 years sentence already in the record as to the armed robbery conviction.

In his appeal to the Louisiana First Circuit from the resentencing held on May 23, 2012, Weary's appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there were no non-frivolous issues to raise on appeal, and moved to withdraw as counsel and to dismiss the appeal.[26]  Weary thereafter filed a *pro se* supplemental brief asserting the following grounds for relief:[27] (1) he was denied effective assistance of appellate counsel because of the *Anders* brief; (2) he was actually or constructively denied effective assistance of counsel during the resentencing; (3) the sentence imposed is excessive; and (4) abuse of discretion by the sentencing court.

On April 24, 2015, the Louisiana First Circuit found no merit in Weary's arguments, granted counsel's motion to withdraw, and affirmed the sentence.[28]  The Louisiana Supreme Court denied Weary's related writ application on April 8, 2016, without stated reasons.[29]

In light of the resentencing,[30] Weary's armed robbery conviction and sentence became final 90 days later, on July 7, 2016, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the

---

[26]St. Rec. Vol. 4 of 5, Appeal Brief, 2014-KA-1706, 12/16/14.  The Court had apparently lodged a prior appeal during the aftermath of the resentencing and that appeal was dismissed in light of the appeal in 2014-KA-1706. St. Rec. Vol. 3 of 5, Motion to Dismiss Appeal, 1/13/14; 1st Cir. Order, 2013-KA-1197, 2/18/14.

[27]St. Rec. Vol. 4 of 5, Supplemental Brief, 2014-KA-1706, 1/14/15.

[28]*State v. Weary*, No. 2014-KA-1706, 2015 WL 1893258, at *1 (La. App. 1st Cir. Apr. 24, 2015); St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2014-KA-1706, 4/24/15.

[29]*State v. Weary*, 191 So.3d 583 (La. 2016); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2015-KO-1030, 4/8/16; St. Rec. Suppl. Vol. 8 of 8, La. S. Ct. Writ Application, 15-KO-1030, 6/12/15 (dated 5/24/15).

[30]*Magwood*, 561 U.S. at 341-42.

United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see*, *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review); *see also*, *Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (the AEDPA limitations period "did not begin until both his conviction and sentence became final by the conclusion of direct review or the expiration of the time for seeking such review." (emphasis added, quotation omitted)).

On June 3, 2016, however, Weary signed and submitted an application for post-conviction relief in the state trial court asserting no claims.[31] The state trial court denied relief on the showing made.[32]

Weary also did not include any claims in his Louisiana First Circuit writ application, indicating instead that he wanted the application denied so he could complete exhaustion to get to federal court to assert the claims he asserted in his resentencing appeal.[33] On September 22, 2016, the Louisiana First Circuit denied the application on the showing made.[34]

Weary made the same request in his Louisiana Supreme Court writ application submitted October 11, 2016, which also contained no claims for relief.[35] On February 9, 2018, the Louisiana

---

[31]St. Rec. Vol. 4 of 5, Application for Post-Conviction Relief, 6/6/16 (dated 6/3/16).

[32]St. Rec. Vol. 4 of 5, Trial Court Order, 6/17/16.

[33]St. Rec. Suppl. Vol. 7 of 8, 1st Cir. Writ Application, unfiled copy.

[34]St. Rec. Vol. 4 of 5, 1st Cir. Order, 2016-KW-0981, 9/22/16.

[35]St. Rec. Suppl. Vol. 8 of 8, La. S. Ct. Writ Application, 16-KH-1907, 10/21/16 (not date; metered 10/11/16).

Supreme Court denied the application finding that Weary failed to identify a cognizable claim for post-conviction review, citing La. Code Crim. P. art. 930.3.[36]

## III.    **Federal Petition**

On April 4, 2018, the clerk of this Court filed Weary's federal petition for habeas corpus relief in which he asserts the following grounds for relief:[37] (1) he was actually or constructively denied effective assistance of counsel during the resentencing hearing held on September 16, 2013;[38] and (2) the sentence imposed on resentencing was excessive.

The State filed a response in opposition to Weary's petition asserting that his claims are without merit.[39]   In his reply, Weary asserted that the hearing on September 16, 2013, was a resentencing at which he was denied effective assistance of counsel.[40]

## IV.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[41] applies to this petition, which is deemed filed in this Court no later than

---

[36]*State ex rel. Weary v. State*, 235 So.3d 1099 (La. 2018); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2016-KH-1907, 2/9/18.

[37]Rec. Doc. No. 1.

[38]Weary continually references a hearing on "September 13, 2013" on which there was no hearing in the state trial court.  The correct date is September 16, 2013.

[39]Rec. Doc. No. 12

[40]Rec. Doc. No. 13.

[41]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

April 4, 2018.[42]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record establishes that Weary's federal habeas petition was timely filed, state court review was exhausted, and no claim is in procedural default.  The Court will address the claims.

## V.    Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court

---

[42]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Weary's petition on April 4, 2018, when it was received.  The official stamp of the prison legal programs department reflects that the pleading was received from Weary on April 4, 2018, for electronic mailing to the Court.  Rec. Doc. No. 1, p. 17.

findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable-application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 572 U.S. at 427; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.

The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    Ineffective Assistance of Counsel

Weary alleges that he was actually or constructively denied counsel during the state trial court's September 16, 2013, hearing related to his resentencing on the armed robbery conviction. He initially claims in his brief that the state trial court did not appoint him counsel at the hearing, denied his request for a continuance, and proceeded to "resentence" him in accordance with the federal court's mandate following his granted habeas relief.  Despite these assertions, Weary later concedes in his brief that he was appointed counsel at the hearing, but claims that his counsel did not want to represent him in the resentencing.  Weary, nevertheless, indicated that appointed counsel conferred with the state trial court on his behalf during the hearing.

Under a broad reading, Weary appears to assert that his appointed counsel's unassertive actions during the hearing amounted to the constructive denial of assistance during a critical proceeding. He also contends that it was error for the state courts to deny him relief on this issue based on the minute entry from the hearing without reviewing a transcript.

Weary asserted this issue in his *pro se* brief on appeal after the resentencing. The Louisiana First Circuit found that, pursuant to the federal court's habeas corpus directive, Weary was resentenced on May 23, 2012, on the armed robbery count after the prior sentences on both counts were vacated and the State's *nolle prosequi* of the attempted first degree murder count. The Court also held that the September 16, 2013, hearing was merely a clarification of that sentence after the federal district court questioned whether the *nolle prosequi* acted to vacate the conviction as previously ordered in the partial granting of habeas corpus relief. Relying on the holdings in *Strickland v. Washington*, 466 U.S. 668 (1984) and *United States v. Cronic*, 466 U.S. 648 (1984), the Louisiana First Circuit held that Weary could establish no prejudice as a result of the performance of his appointed counsel at the September 16, 2013, hearing or the fact that he had different counsel at the May and September hearings. This was the last reasoned decision on the issue.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address

14

both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

Furthermore, in *Cronic*, the Supreme Court recognized that a presumption of prejudice may exist when the performance of counsel may be so inadequate that it constitutes a constructive denial or no assistance of counsel at all, despite the physical presence of an attorney at the proceeding. *Cronic*, 466 U.S. at 648, 654 n.11. The *Cronic* presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing;" or (3) counsel "is called upon to render assistance where competent counsel very likely could not." *Cronic*, 466 U.S. at 658-59 (citations omitted). Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] <u>so</u>

high" that a constitutional violation may be found. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (emphasis added).

The Supreme Court has emphasized that, for the *Cronic* presumption to apply, "the attorney's failure must be complete." *Bell*, 535 U.S. at 697. "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*," the Supreme Court held that a case does not come under *Cronic* merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. *Bell*, 535 U.S. at 697. The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." *Bell*, 535 U.S. at 697. The *Cronic* standard applies only when counsel has entirely failed to challenge the prosecution's case. *Id*. at 697; *Riddle v. Cockrell*, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); *Mayo v. Cockrell*, 287 F.3d 336, 340 n.3 (5th Cir. 2002); *Burdine v. Johnson*, 262 F.3d 336, 344 n.4 (5th Cir. 2001). The petitioner has the burden to show that he was constructively denied counsel. *Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997). "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel. Bad lawyering, regardless of how bad, does not support the [*per se*] presumption of prejudice." *Johnson v. Cockrell*, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998)) (quoting *Childress*, 103 F.3d at 1228-29).

On habeas review, the Supreme Court has also clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."

17

*Harrington*, 562 U.S. at 105.   The *Harrington* Court went on to recognize the high level of

deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and
> when the two apply in tandem, review is doubly so.   The *Strickland*
> standard is a general one, so the range of reasonable applications is substantial.   Federal habeas
> courts must guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is
> not whether counsel's actions were reasonable.   The question is whether there is
> any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential."

*Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).   The federal

courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard

through the "deferential lens of § 2254(d)."   *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting

*Knowles*, 556 U.S. at 121 n.2).

The issues of actual and constructive denial of counsel under *Strickland* and `are mixed

questions of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*,

609 F.3d 774, 789 (5th Cir. 2010); *French v. Jones*, 225 F.3d 658, 2000 WL 1033021, at *3 (6th

Cir. Jul. 18, 2000) (constructive denial) (Table, Text in Westlaw).   The question before this court

is whether the state courts' denial of relief on this issue was contrary to or an unreasonable

application of United States Supreme Court precedent.

In evaluating Weary's claim, the state courts resolved that the hearing held September 16,

2013, was not a resentencing but an opportunity for the clarification of the sentencing that took

place on May 23, 2012.[43]   As such, Weary could not and did not establish any prejudice arising

---

[43]St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2014-KA-1706, 4/24/15.

from the hearing since he clearly had appointed counsel present at the hearing and demonstrated no prejudice from the corrective measures taken by the state trial court or the restatement of the same sentence that he already was serving for the armed robbery count.  The record supports the conclusions reached by the state courts and demonstrates no basis for a presumption of prejudice.

The record and transcript are clear that Weary had appointed counsel present with him at the September 16, 2013 hearing, and that counsel participated in discussions with the state trial court at the hearing.  The transcript of the hearing also indicates that Weary was given great leeway by the state trial court to express his own concerns about the proceedings and explain his collateral activity pending in the federal courts.

While his counsel's discussions with the court are not transcribed,[44] Weary does not point to any particular arguments or legal stands that should have been made by his counsel.  It is not enough for Weary to merely state that his counsel stood silent without indicating what particular actions or arguments his counsel should have taken in the hearing.  *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").  The record reflects nothing done by the state trial court that warranted an objection by Weary's counsel.

As all of the parties conceded, the state trial court simply followed the orders issued by Judge Berrigan, which warranted no challenge by Weary's counsel.  Weary's counsel had no case to contest, defense to raise, or adversarial position to assert where the state trial court was bound

---

[44]The transcript indicates that counsel and prosecutor had an unrecorded conversation with the state trial court at the bench.

to vacate the sentences and one of the convictions and re-impose the appropriate sentence mandated for the remaining conviction. The state trial court did as ordered. Weary's appointed counsel was not obliged by the Sixth Amendment to "do what is impossible or unethical" or to "attempt[] a useless charade" where there is "no bona fide defense" to the proceedings his client faces. *Cronic*, 466 U.S. at 656 n.19.

Furthermore, it is important to note that the United States Fifth Circuit also determined that the *nolle prosequi* on May 23, 2012, served the same function as the vacating of one of the convictions, citing the specific purpose and function of the *nolle prosequi* under Louisiana law.

> Thus, though it operated under a different procedural label, the *nolle prosequi* in this case functioned much like the vacation of one of Weary's convictions would have -- namely, it eliminated the basis of Weary's claimed constitutional defect.

*Weary v. Cain*, 587 F. App'x 797, 801 (5th Cir. 2014); Civ. Action 10-1793"C"(4), Rec. Doc. No. 57.

Following this reasoning, there was no legal basis for Weary's counsel to have objected to the proceeding on September 16, 2013. In addition, Weary can prove no prejudice, and no prejudice can be presumed, from his counsel's failure to challenge the hearing which served to correct and clarify the resentencing that had already occurred and which ultimately was affirmed on appeal.

Whether considered under *Strickland* or *Cronic*, the state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent. Weary is not entitled to relief on this claim.

## VII.  <u>Excessive Sentence</u>

Weary asserts that his habitual offender status was "reversed" before he was resentenced to serve 75 years in prison on the armed robbery conviction in 2012, and the state trial court did

not provide reasons for the sentencing.  Under a broad reading, Weary contends that his sentence does not comply with the mandates in *North Carolina v. Pearce*, 395 U.S. 711 (1969), where it did not give him credit for time served.

Weary asserted this claim on appeal to the Louisiana First Circuit following the resentencing.  The Court denied relief on the claim holding that the habitual offender adjudication had been affirmed on direct appeal (following the original sentencing) and had not been abrogated by the federal district court.  Therefore, the Court concluded, Weary was subject to the enhancement as a second offender and was appropriately sentenced with credit for time served.

Under a broad reading, Weary contends that his resentencing to 75 years in prison was excessive because he had already served part of the original sentence and it was imposed pursuant to a habitual offender proceeding that was no longer viable.  Thus, while he uses the word "excessive," he is not actually asserting that he received a disparate sentence compared to other similarly situated felons.  Instead, he asserts that his prison term on re-sentencing was illegally enhanced based on the prior multiple offender adjudication and resulted in a harsher sentence then he should have received following the partial grant of federal habeas relief.

The Due Process Clause violation of prosecutorial or judicial vindictiveness applies if a person's charges or sentence is increased after he exercises a legal right.  *United States v. Goodwin*, 457 U.S. 368, 372 (1982).  The principle is also implicated where, after a defendant exercises his right to appeal, he is given a harsher sentence following a retrial on the same charges.  *Pearce*, 395 U.S. at 725.  In *Pearce*, the Supreme Court held that a resentencing judge may not constitutionally impose a more severe sentence upon a defendant following an appeal without reciting intervening independent and objective conduct justifying the harsher result.  *Id*.

It appears to the Court that Weary intends to assert this principle as the basis for his claims that his prison term on resentencing was "excessive." This type of vindictiveness claim is a mixed question of law and fact. *See United States v. Wood*, 36 F.3d 945, 946 (10th Cir. 1994). The Court must determine if the state court's decision to deny relief was contrary to, or involved an unreasonable application of, Supreme Court precedent.

To invoke this principle, the accused must show that, after he exercised a legal right relative to his criminal case, the state committed some act that made his prosecution or sentence more severe. As determined by the state courts, Weary has failed to establish such a claim.

As clearly established by the record, Weary originally was convicted of attempted first degree murder and armed robbery. He was adjudicated a second offender as to the armed robbery count and sentenced to serve 75 years in prison at hard labor. He separately was sentenced to serve 25 years in prison for attempted first degree murder. When he was granted federal habeas relief on double jeopardy grounds, the state trial court as ordered vacated the prior sentences, vacated the attempted first degree murder conviction, and re-imposed the exact same sentence Weary received as a second offender on the remaining armed robbery conviction.

Considering the record, the armed robbery conviction and the punishment imposed for that conviction remained the same. Both the factual support for the armed robbery conviction and the multiple offender adjudication were affirmed on direct appeal in the state courts. This Court previously denied federal habeas relief in Civ. Action 10-1793"C"(4) on Weary's claim of insufficient evidence to support the armed robbery conviction. This Court's prior orders did not implicate or abrogate the veracity of the multiple offender adjudication or the enhancement of Weary's armed robbery sentence.

Simply stated, the straightforward goal of this Court's prior order granting habeas relief was to assure Weary the protections from double jeopardy implicated by his conviction for both attempted first degree murder and the armed robbery on which the attempted first degree murder conviction may have been based. The state trial court was free to resentence Weary in accordance with state law on the remaining conviction after one of the convictions was vacated. In this case, the state trial court imposed the exact same sentence (as enhanced by the multiple bill) that had been imposed prior to the grant of federal relief and did so with credit for time served. The resentencing, therefore, did not result in a harsher sentence than what had been imposed before Weary exercised his right to seek federal habeas corpus review.

Weary has failed to establish that the denial of relief on this issue was contrary to or an unreasonable application of federal law. He is not entitled to relief on this claim.

**VIII.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Weary's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[45]

New Orleans, Louisiana, this <u>13th</u> day of September, 2018.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[45]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.